Good morning, Your Honors. Good morning. If the Court please, my name is Eugene Jarrell. I represent Joseph Elassad, the appellant in this matter. Your Honors, it is my contention and the contention of appellant here that the decision of Wyeth v. Levine, 2009 Supreme Court decision, has changed the landscape of evaluation of preemption analysis in these types of cases, even though... But Wyeth was not a field preemption case. Well... And I must tell you, we are hearing from everybody in your situation that Wyeth has changed the landscape. Well, Your Honor, I would point to a recent Supreme Court decision of Crosby in which it said you can't always pigeonhole these preemption analysis into clear pockets of analysis. But, I mean, we have Abdullah. We have Abdullah. How... Well, it's my contention, at least the first argument, that Wyeth, in terms of its similarities with this very case, we have a situation where states have been involved in aviation safety since the initial flights in these matters. In 1958, when the FAA was passed, there were state standards of care. There were... But aviation is different from drug manufacturing. I mean, aviation and railroads. We had a railroad preemption case a couple weeks ago. I mean, we have policies having to do with certain things involving interstate and national transportation that are just different from individual actions against a drug manufacturer. Well, Your Honor, I again would say that they're analogous, and particularly under the circumstances of this case. We can't ignore the fact that this plane had already landed, was parked at the gate, and it's... So is the distinction that a plane in the air is governed by FAA regs, but a plane on the ground is governed by 50 different jurisdictions, tort law? It's governed by state common law, Your Honor, because there is... Why? What's the reasoned distinction between the plane in the air and the plane on the ground? Because congressional intent legislative history starts with the idea that FAA was passed because of differing flight rules between military planes and civil planes. And the concern was air management, pilot regulation, safety features, and conduct that takes place in the air. But under the ADA, under the ADA Deregulation Act, you've got routes, rates, and services that are specifically preempted. You know, it has to do a lot more with just the air, and this might even qualify as a service, service being provided by attendants. Well, Your Honor, I believe that the Wallen Supreme Court decision has put that issue to rest, as well as numerous other circuit and district court opinions. Personal injury cases do not fall within the ADA exemption. And by analysis and comparison, here we have a situation where... Excuse me, I lost my train of thought. I think you're talking about personal injury. Yes. The FAA has not in its entire history expressly preempted safety regulations. It has only addressed the rates, routes, and services, which occurred in 1978. So from 58 to 78, they're aware of the state common law standards. From 78 forward, it still worked with state standards of care. The Gatsby decision, which I referred in my brief, talked about the use of FAA regulations to establish negligence per se, yet... But let's talk about the ACAA. Doesn't that, I mean, regardless, maybe the, you know, that standard that is provided for attendance in this situation, even if we weren't to make a bold statement that everything, every aspect should apply, there is a specific standard that applies squarely to this fact pattern. If that standard is, and doesn't that standard apply here? Well, only with regard to the controlling of discrimination against passengers. I would strongly... Well, in the course of doing what you need to do to not discriminate, you follow it. You are doing something different from what you would have this person do. You would have the attendant violate the ACAA, would you not? No, Your Honor, because the ACAA does not prohibit the offering of assistance. In fact, the ACAA in Part 382 speaks not only of the request for assistance, but also the offering of assistance and acceptance of that existence. But then there's other provisions I think cited by your colleague about how this is the way you're supposed to act toward the disabled. You're not supposed to be overly enthused. You're not supposed to do this. I mean, you know, damned if you do and you're damned if you don't. Well, Your Honor... And you pled negligence, correct? Yes. Well, doesn't it at least supply a standard of care, the ACAA? It could have done something different, but doesn't it supply a standard? I would contend that it doesn't because even in the materials cited by my opponent, it says on two different occasions, offer of assistance only if passenger appears to need help. In another location, there was a similar type of language that if it's apparent that the passenger needs help, you can certainly offer it, and there's no prohibition against offering assistance. Let me ask you this. Why do we have to pick and choose? Why can't both the ACAA and the overarching requirement of the FAA that requires the airline employees to refrain from reckless and careless conduct, why can't they both inform the standard of care for the situation here? I mean, if one's about discrimination and another's about negligence, because it talks to careless and reckless. Section 9113 does talk about careless and reckless, but it talks about it in reference to the operation of aircraft, and it's my contention that this aircraft was no longer being operated. When we talk about flight time, first of all, a pilot's command – When does operation stop? When it's – When the engine goes off? Yes, yes. With regard to aircraft operation, the pilot operates the aircraft. The pilot's command over the aircraft and crew and passenger safety occurs only during flight time. That's 14 CFR 121533. There have been a lot of district court cases that have said that that's not correct, that air safety includes, you know, when you're de-icing and all kinds of other things. I'm speaking specifically of 9113. I mean, Abdullah used 9113 as a blanket of protection as well as a gap filler to support its holding of field preemption. Yet in this case, if 9113 doesn't exist, because we're not talking about necessarily the conduct of the pilot and flight crew, we're also talking about ground personnel. Assistants such as ramps or somebody standing at the bottom of the stairs, that's going to come from ground personnel. And it's going to be different in every state. They've got to realize that we came down in New York versus we came down in Pennsylvania versus we came down in Virginia. We're supposed to do this here or there. It's going to be inconsistent. You're talking about a jury that's making a determination of whether or not the conduct is negligent under state law. No, I'm talking about the poor attendant who's got to realize that she just landed in Ohio and Ohio says you do and Pennsylvania says you don't. But should a flight attendant have the complete discretion to either ask or not ask under the same situation? In this particular case, the flight attendant thought that the person needed help, went to the stairs, said that he motioned for someone to come to the bottom of the stairs, yet they didn't come to the bottom of the stairs. And Mr. Ellis said – Well, that's all for another day. I mean, we've just got to decide what the standard is, and then maybe your case proceeds or maybe it doesn't depend upon whether – depend upon the applicable standard. Don't we have to figure out what Congress meant when it passed the Deregulation Act? Yes, Your Honor. So do you think Congress meant when it did that and it was aiming to create a unified national air transportation system that we're going to have the many jurisdictions in the country decide on a state-by-state basis what is and isn't the standard of safety once the plane is parked? That's what it comes down to, right? It's my – yes, that is my contention, that juries operating under state common law standards should make that decision. And what is it you're relying on in the case law or the regs or otherwise that will tell us that, yeah, that's in fact what Congress meant? Because Congress over the past 50 years has not issued an express preemption in covering these issues and covering safety regulations in their entirety. I would agree that there are discrete areas that's certainly preempted. That's already been recognized. I'm not arguing against that. Can Taj Mahal and Abdullah be read together consistently or are they inherently inconsistent? I mean, Taj Mahal's got some pretty good language from your side, right? Where Judge Weiss says things like, it is highly unlikely that Congress intended to deprive passengers of their common law rights to recover for death or personal injuries sustained in air crashes, for example. Okay? Can that kind of language be read consistently with the field preemption language of Abdullah or not? Well, the field preemption of Abdullah, I just think Abdullah went too far, is overly broad and wasn't intended to cover this conduct that occurs on the ground. When they point to 9113A, they're talking about the comprehensive overriding catch-all regulation addressing pilot and crew member conduct. We're beyond that when the plane is on the ground, when the pilot's command is no longer existing over the crew member and passenger safety. Is there specific language in Abdullah that you rely on to say, well, when they were looking there at 9113 in Abdullah, they meant the operation of the aircraft by the pilot, not the aircraft after it was parked. Do you have something to point to? Well, on page 371 of Abdullah, when they first get into 9113, they talk specifically of the comprehensive system governing pilot and crew member conduct. It doesn't go beyond that. Without 9113, you don't have the blanket of protection, you don't have the gap filler, and now you need something. Because Congress has not enacted express preemption, given its knowledge and understanding of state common law, was playing a part for years and years, decades. To me, I would suggest indicates that Congress did not intend complete field preemption of all aspects of aviation safety. Well, I guess what Judge Jordan asked you is, where is that in Abdullah or elsewhere that says, once this plane is parked and we're dealing with the crew and maybe not the pilot, why 9113 goes out the window? Why that general standard of care to refrain from operating in a careless or reckless manner? Why does that no longer apply? Well, because 9113 only concerns itself with pilot, with operation of aircraft, and only pilots operate aircraft. Well, where do you find that? I mean, I don't know that to be fair. Aren't stairs supposed to be certified and inspected, and isn't there federal regulation on the stairway? Well, the stairway doesn't come down until the engine's off, so certainly there is an intent to regulate that. Aren't stairs covered by regulation? Well, there are no prevalent regulations governing the design of stairways. That was fully described and set forth in the Ninth Circuit opinion in Martin v. Midway. That's also a 2009 opinion that's in my brief. We'll hear from Mr. Stern about that. Had anyone argued in the court below, did the discussion ever get to the question of whether this actually constituted negligence as a matter of law? Well, only to the extent that Judge Ludwig said that, in his opinion, the careless and reckless standard was improved because there wasn't grave life-threatening conduct, as discussed in district court opinion in Allen. But under Pennsylvania, there was no discussion, argument, consideration of whether, if Pennsylvania law applied, this would make out a claim, was there? It was not argued that it would not make out a claim under Pennsylvania law. Okay. And just finally, even if 9113 applies, Abdullah tells us that we have to look at 9113, regardless of whether or not there may be some specific regulation, and that it has to be, you know, it's encompassed in this evaluation of standards of care. So even if you want to say 9113 exists, it's still there as a blanket of protection coming over top of all specific regulations. All right. Thank you. Thank you. Did you reserve rebuttal time? I did not, no. All right. May it please the court. My name is Jonathan Stern. I'm with the Schneider firm. And I would like to start out by acknowledging that I come before the court with an argument that probably at first strikes as counterintuitive. We have a man in this case with one leg on crutches, and the law, as we framed it, is that he is not required to be offered assistance by the air carrier. I think when you look at the background to this, however, it makes complete sense. In the Air Carrier Access Act, Congress directed the Secretary of Transportation to promulgate regulations that would both ensure nondiscriminatory treatment of qualified handicapped individuals, but also to ensure safe carriage of those passengers as well as all others. Can I ask a question? Certainly. I think there's two different things happening here. There is an argument that there's federal preemption, that the FAA takes over the field, and that there's careless. Careless and reckless is a standard for operation. There's case law that says careless and reckless doesn't supply a standard. There has to be something more. Then there's the ACAA. The ACAA, it specifically says this does not mean to take over. You still have to comply with safety regulations. So it says in it almost, yo, this is not a safety regulation. Is the ACAA relevant here as a standard of care, or is the ACAA here relevant as a regulation that supplies the requisite regulatory safety provision under careless and reckless? I'm trying to figure how they relate and whether this is really a preemption case or a case where you say we have a federal standard of care that definitely applies here, and that's it. I think, Judge Rendell, there's a little bit of both going on here. That's what I was afraid of. With respect to the ACAA, as Your Honor recognized in questioning Mr. Jarrell, the flight attendant would be in a no-win situation. Excuse me. The flight attendant is instructed by the technical manual issued by the DOT not to assume that someone with a handicap requires assistance, because many such people take great pride. And this plaintiff is a great example. He took great pride in his ability to be mobile on his own. He said in his deposition that he'd been on his crutches for 27 years, and I've only fallen once before this. And I can do things nobody can believe. So the ACAA provides the standard with respect to the question of whether a person with a disability must be offered assistance by the airline without a request. Well, wait a second. Isn't what you're asking us to do is to morph something which, by its terms, as Judge Rendell pointed out, is not a safety regulation into a safety regulation? I mean, you quote in your brief the regs that say on page 18, this is a detailed, comprehensive national regulation based on federal statute that substantially, if not completely, occupies the field of nondiscrimination on the basis of handicap and air travel. In other words, this is a nondiscrimination regulation. How does it become a safety regulation when it says in it it's not supposed to be taken over safety? Well, what it says actually, Judge Jordan, is that you still have to comply with the FAA safety regulations. Because that's the safety regulation, right? Well, no, because Congress had a dual mandate for the ACAA regulations. They were to address it. Wouldn't that set up a very curious result, Mr. Stern? Because what you're suggesting is that if an able-bodied person tripped down the same set of stairs, that they would not get the kind of safety rights that a person with crutches would. No. If the ACAA regulation, which is directed specifically to disabled people, is really a safety regulation, are there two different safety regulations, one for the able-bodied and one for the disabled? Yes, and my position is... For disabled or non-disabled. There is no applicable specific regulation. So I think in this context, the able-bodied passenger would be evaluated, his claim would be evaluated under 91.13, under the careless or reckless standard. But in this case, the claim to assistance is based entirely on Mr. Ellisad's disability. There were... So the totally able person who falls down those steps could present to a jury as a question of fact whether or not the airline crew acted carelessly or recklessly, but Mr. Ellisad could not. No, Mr. Ellisad could benefit from the careless or reckless standard if his claim were based on something other than his disability, but it is not. It originally was. When he first brought the complaint, he did allege that there were conditions of the steps, specifically... Yeah, defective design. Well, defective design... How did that get thrown out? He withdrew those contentions. Are steps regulated? Per se, the design of the steps is not regulated. So his claim is whether or not this crew negligently failed to assist him in deplaning. That is his claim. Should we understand anything? Now, I recognize this is a comment in Taj Mahal that's not the centerpiece of the case, but in discussing the Supreme Court's Wollin's decision, Judge Weiss went out of his way to point out, and I'm quoting from page 192 of Taj Mahal, the government, in its amicus curiae brief, stated, quote, it is unlikely that Section 1305A1 preempts safety-related personal injury claims related to airline operations, close quote. Should we give what the government said in amicus brief in another case, about, though, statutory interpretation, any weight in what we do here? I think this Court dealt with that issue in Abdullah, because what the Court said is the standards that are provided by these very comprehensive regulations are all-encompassing, and state law cannot add to those standards. But the way we're going to deal with this issue of the recognition that, indeed, passengers could bring a cause of action if they were hurt as a result of violations of those standards is that we are going to allow state law to supply the cause of action, but not the standard. So the state law is the remedy, but the standard is a federal one? That's correct. That's the holding of Abdullah. How do we know that Abdullah? I'm sorry. I was going to say, is that the holding of Abdullah? Let me give you some language from Abdullah and ask you to respond to this in a couple places. This is from page 367 of the opinion. We hold that federal law establishes the applicable standards of care in the field of air safety generally, thus preempting the entire field from state and territorial regulation. When it says air safety, I understand your opponent to be saying that's operation in the air. If this court, the Third Circuit, meant to say it's to preempt the entire field of, say, passenger safety, it could have said passenger safety, but it said air safety because when the pilot's flying the plane, you don't want the several states getting in the mix. But when the pilot isn't flying the plane and it doesn't have to do with operation of the aircraft, then something different. So set that, and I'll add this other piece of language so you can take them on both at once. This is from page 371. In determining the standard of care in an aviation negligence action, a court must refer not only to specific regulations but also to the overall concept that aircraft may not be operated in a careless or reckless manner. In other words, the operation of the conduct, the operation of that plane, not it parked on the tarmac, people getting in and off. Could you respond to what I understand the plaintiff's argument to be, that there's something fundamentally different between an aircraft that isn't being operated, it's just on the ground and people are getting on and off, and one that is? Obviously, we disagree about where you draw that line. If, for example, this were a case involving something that occurred in the terminal, I would not make this argument to the court. But this occurred as the airplane arrives at the gate, parks, there is operation of the aircraft involved in opening the door, putting down the stairs, and discharging the passengers. But that's all happened. I mean, the aircraft is parked. It's stopped. The stairs are down. The assertion here isn't, I was hit by the stairs as they came down. It's that I tripped down the stairs because no one helped me. So is the distinction then that you're touching the aircraft? I mean, if he'd stepped off the stairs and then tripped on the tarmac, would your assertion be, because nobody helped him, no airline person was there, would your assertion be that now it's state law? Well, no. It would not be my assertion because my argument is that there are three different preemption rationale for this case. You just said that it wouldn't matter if it happened. I mean, it would be state law if it was in the terminal. What's the difference between tripping in the terminal because no airline person helps you and tripping on the tarmac because no airline person helps you? I was focused, Your Honor, on the Abdullah question. And in terms of Abdullah preemption, that stops when you're no longer involved in the operation of the aircraft. So what is, if the point of this, if the demarcation point is operation of the aircraft, once the plane is parked, the engines are off, the stairs are down, in what sense is the aircraft being operated? I maintain that until you have discharged your passengers, you're still operating the aircraft. And, in fact, the record reflects that the pilot was still in his seat in the cockpit, the flight attendant is still performing his duties. So it is the physical contact with the plane that makes the difference. Yes, the definition, the regulatory definition of operation is use of the aircraft. I think you are using the aircraft when you are going down the stairs that are actually an integral part of the aircraft. These are air stairs. They're part of the door. So trip on the stairs, you're governed by federal law. One step away on the tarmac, you're governed by state law. No, Your Honor. My contention is that Abdullah would end at the tarmac. When you get off the airplane onto the tarmac, that's the end of Abdullah. Isn't that what I just said? Yeah. But I am arguing that conflict preemption applies here, and that would apply anywhere along that route. It wouldn't have to be on the airplane. And, as well, that... And so where does that end? Where does your conflict preemption argument end? As I'm going into the terminal? As I'm driving up to the terminal? No, it doesn't end. The question before the Court here is... On my way to the airport? Well, the question is, does the air carrier have a duty to affirmatively offer assistance to a passenger with a disability? And the answer is they do not. Any place on the way to the airport, if someone could make an argument that they otherwise would have such a duty, anywhere in the terminal. If they want the assistance, they ask for it. And the reason for that, when the DOT was mandated to pass these regulations to bring ACCA into force, they used regulatory negotiation. They actually brought interest groups together in order... What if there's a fire on the airplane? I mean, what if there's a situation created that, you know, the standard of care and speaking enthusiastically and not, you know, offering help, you know, may go out the window? Well, what about if this situation, the person's coming down the stairs and it's observed by a couple people that this is not going to go well? You know, aren't there situations that create a different reaction from attendance than what the non-discrimination policy says should normally occur? And those are things you should normally think about having to do with someone's safety in an unusual situation. Indeed, Judge Rundell. And what we're talking about in this case is the normal situation. Well, I'm not sure. You know, maybe somebody realized that he needed trouble, and maybe we're not just in the ACAA. Maybe we're under careless and reckless. Does careless and reckless also apply? Or would you say because there is no specific FAA requirement under the careless and reckless standard, then careless and reckless don't apply? Well, I think in the example Your Honor gave, the careless and reckless standard would apply for all passengers. And in an emergency situation, out of the norm, not – again, Mr. Ellisad had claims that there were defects in the stairs, water on the stairs, ice on the stairs. Those were all withdrawn. They were withdrawn because of his deposition. I asked him about those, and he said they didn't exist. I'm sorry. You should finish your answer. Yes. So careless and reckless is the answer. If you have an emergency, then I think the flight crew's conduct is evaluated as to all passengers. So if we were to find preemption to exist, we would give leave to Mr. Ellisad to replead under the appropriate standard? No. If we could? I don't see why we would do this. This case was trial ready. It had a full record, and there had been pleadings of other reasons that you might have applied the careless or reckless standard. They were all withdrawn. The only issue remaining was whether or not the airline was obligated to offer Mr. Ellisad assistance because of the condition that he was in. And whether they were negligent in not doing so? Yeah, negligent. Right. Yeah, that was the issue, negligence. Were they negligent? No, but there's no basis that you could say the same thing, then, about any other passenger on the flight. I'm not saying it's a good negligence claim. I'm just saying as a matter of the procedural record here, he's made a negligence claim, right? Well, he's made a negligence claim, but he has taken any reason that there might be to apply the careless and reckless standard, he's withdrawn all of those. And he has said the only question is whether the airline is obligated to offer him assistance, and the only rationale for that assistance is his disability. And you don't think this is an unusual situation where airline personnel, and really I think his question is, were they careless in not offering him assistance? And you see a man with one leg who's having difficulty navigating the descent. And he claims I think he asked for a wheelchair. I know there's a dispute of fact there. I thought he did. No, Judge Ambrose, there was no. I think what he said was I didn't know I could get that. Judge Ambrose, there was no request for assistance. In fact, the record reflects that on boarding the flight in Boston, he was offered and declined assistance, and he took great pride in his ability to do all these things. He claimed he was not somebody who wanted or appeared. The record reflects the flight attendant said this man looked extraordinarily capable. Doesn't this go to the question of whether there was negligence at all? That's the argument you're making to us, is that even if there was a negligence claim, there isn't. I mean, even if he had made a negligence claim, which I understand you'd be saying you don't think he did, but if he did, there really wasn't negligence here. I'm not sure how that goes to the question we're dealing with, which is the preemption issue. I had one last question for you, but I didn't want to cut off with Judge Ambrose if she hadn't followed. You're saying aside from your field preemption argument, you have a conflict preemption argument, and that would cover anything to do with wherever you are, in the terminal or anyplace else. So my question to you is, is your assertion that somehow Abdullah vacated Taj Mahal, that there's nothing left of that opinion? Taj Mahal deals with the Airline Deregulation Act express preemption. And doesn't it specifically say in numerous spots in that opinion, we don't think that Congress was trying to push the states out of the business of dealing with ordinary state torts? That's the holding of the case, right? You asked, Your Honor, whether you could reconcile the two cases, and I think they're easily reconciled. And the reconciliation is that Abdullah recognizes that Congress did not intend to deprive passengers of the right to recover for personal injuries, but that federal law would provide the standards by which such claims would be analyzed. So is there a – I guess my specific question to you with my colleague's indulgence is just this. Is your conflict preemption argument such that there's nothing left of Taj Mahal? What would be left of Taj Mahal if we accepted your argument? Taj Mahal doesn't deal with the issue of disabled passengers. So you're relying on the distinction made at the outset, that there's a different safety regulation for the able-bodied and the disabled? Yes, there is. The person with a disability has this rule, and I would like to, if I may, just very briefly circle back to the point I started to make, which is that this was done by regulatory negotiation, and the Paralyzed Veterans of America, the National Council on Independent Living, the American Council of the Blind, the National Association of Protection and Advocacy Systems, and other – I'm sorry, I have one very specific question to ask. You had cited a regulation. You said this is the definition of operation of an aircraft, and you gave a citation. What was that again? I don't think I gave the citation. Oh, I'm sorry. I believe it's in 1.1, 14 CFR 1.1. And what does it say? It says that operation of aircraft means to use an aircraft. Right. Including piloting. Not limited to, but including piloting. And related to that, I know that Mr. Jarrell cited to the court a preamble from what is now 91.13B, which is not for the purpose of air navigation. And that is very clear that that only applies when you don't intend to fly the airplane, such as when you're doing maintenance, which clearly is not the case here. Thank you very much. Thank you, counsel. Thank you. This is well argued. We'll take it under advisement. I'm going to ask the clerk to recess.